IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHIRLEY TROTTER and ERNIE )
TROTTER, natural mother and father of )
RYAN TROTTER, Deceased, )
                                                  )
           Plaintiffs, )
                                                  )    No. 05-CV-205-MJR
v. )
                                                  )
B&W CARTAGE COMPANY, INC., )
an Illinois corporation, )
                                                  )
           Defendant. )
                                                  )

## **DEFENDANT B&W CARTAGE COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES**

Pursuant to Fed. R. Civ. P. 56, Defendant B&W Cartage Company, Inc. respectfully moves this Court for summary judgment on Plaintiffs' claim for aggravating circumstances/punitive damages. The reasons in support of this motion are more fully explained in the attached Brief, which is incorporated herein.

                                                          Respectfully submitted,

                                                          /s/ Michael A. Lawder
                                                          Michael A. Lawder, Jr. (#6189990)
                                                          **ANDERSON & GILBERT**
                                                          515 Olive Street, Suite 704
                                                          St. Louis, MO 63101
                                                          Phone: 314-721-2777
                                                          mlawder@nuvox.net
                                                          *Attorney for Defendant, B & W Cartage Company, Inc.*

                                                          and

Jonathan M. Menuez (Ohio Bar No. 0064972)
Victoria D. Barto, Esq. (Ohio Bar No. 0071554)
**SUTTER O'CONNELL & FARCHIONE**
1301 East 9th Street, Suite 3600
Cleveland, OH 44114
Telephone: 216-928-2200
Facsimile: 216-928-4400
jmenuez@sutter-law.com
vbarto@sutter-law.com

## DEFENDANT B&W CARTAGE COMPANY, INC.'S BRIEF OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PUNTIVE DAMAGES

Defendant B&W Cartage Company, Inc. ("B&W") respectfully submits this brief of law in support of its motion for summary judgment on punitive damages.

### INTRODUCTION

This wrongful death action arises out of an accident that occurred on February 4, 2005. On that date, a 1999 Kenworth semi tractor, with attached trailer, was operated by Jeffrey Weigert in a westbound direction on Interstate 44 in Crawford County, Missouri. Jeffrey Weigert was an independent contractor driver by B&W from Bluebird Leasing through CWS, Inc. in Gary, Indiana, a division of B&W's parent company, FCS, Inc. At the same time, Plaintiff's decedent, Ryan Trotter, was traveling eastbound on Interstate 44. Defendant's vehicle crossed the median dividing the interstate highway and traveled into the oncoming eastbound traffic. Subsequently, an accident occurred involving three vehicles, including Plaintiff's decedent's 2003 Nissan Sentra. Unfortunately, Mr. Trotter did not survive the collision.

Plaintiffs filed this wrongful death action against B&W on March 23, 2005 in the United States District Court for the Southern District of Illinois. The Complaint asserted multiple allegations of vicarious liability to B&W for the alleged negligent operation of the semi tractor. In addition to the vicarious liability claims, Plaintiffs alleged the following:

> "...(d) Defendant carelessly and negligently permitted, ratified, encouraged and/or authorized its driver, Weigert to operate the tractor truck in excess of the number of hours permitted under applicable law, including, but not limited to 49 CFR 395;
>
> ...(g) Defendant carelessly and negligently permitted and/or failed to prohibit its driver, Weigert, from operating the tractor truck when the Defendant knew of should have know, that the driver's ability or alertness was impaired or likely to become impaired due to fatiguing, illness or other causes so as to make it unsafe to continue to operate such commercial motor vehicle in violation of

applicable law including, but not limited to 49 CFR 392.3..."

See *Plaintiffs' Complaint*, ¶ 15, attached as Exhibit A. The latter, non-vicarious allegations impliedly formed the basis for Plaintiffs' prayer for punitive damages in supplement to any actual damages. Plaintiffs specifically alleged that the conduct of B&W, including the independent contractor, Weigert, were willful, wanton, and in reckless disregard of the rights of Plaintiff's decedent.

At all times pertinent to this action, B&W conducted its commercial motor carrier operations under the administrative mandates of the Federal Motor Carrier Safety Administration Regulations. To ensure compliance with these regulations, B&W employed a Director of Safety, a Director of Rule Compliance and Safety Clerk. See, generally, *Depos. Larry Dean Brown, p. 10* attached as Exhibit B; *Fran Amiot, p. 8* attached as Exhibit C; *and Hazel Holbrook, p. 12* attached as Exhibit D, respectively. The Director of Safety, Larry Dean Brown, instituted regular safety meetings to address regulation compliance topics, including adherence to the hours of service allowed for drivers and driver fatigue. *Depo. Larry Dean Brown,* p. 31. The Safety Department also forwarded safety newsletters directly to B&W contracted drivers. *Id.* at 119-124.

B&W Director of Rule Compliance Fran Amiot and Safety Clerk Hazel Holbrook also worked to ensure driver compliance with hours of service regulations. In that regard, B&W employed three individuals exclusively dedicated to scanning <u>every</u> driver log through computer software in order to confirm each driver operated the tractor trailers within the regulated time limits. *Depo. Hazel Holbrook*, p. 24. The log department also performed random "hard audits" comparing driver supplemental documentation to the submitted logs. *Id.* at 40-41. Amiot, himself, performed one hard audit per day on average or 260 audits per year. *Depo. Fran Amiot,*

p. 162. With approximately 800 active drivers, B&W was hard auditing nearly 32% of its logs.

Plaintiffs' aggravating circumstances and punitive damages claim must now be scrutinized under the rigorous standards of Federal Rule 56(c), which provides that summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact that the moving party is entitled to as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (court properly enters summary judgment where there is not sufficient evidence in support of non-movant's case to find that "a reasonable jury could return a verdict for the non-moving party"). Even assuming Plaintiffs can put forth sufficient evidence to take the *liability* case to the jury, B&W is entitled to summary judgment on Plaintiffs' claims for *punitive* damages. Plaintiff is unable to identify any facts from which a reasonable jury could conclude that B&W acted with complete indifference to or conscious disregard for the safety of others.

The United States Supreme Court has repeatedly issued warnings as to the dangers of punitive damages. In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 208 (2003), the court emphasized the continuing and pervasive danger of arbitrary and grossly excessive punitive damages awards. The Court observed that "[a]lthough these awards serve the same purpose as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable to criminal proceedings. This increases our concerns over the imprecise manner in which punitive damages systems are administered." *Id.* at 417. The Court explained that in its prior punitive damages decisions, it had "admonished that punitive damages pose an acute danger of arbitrary deprivation of property," noting that "'[j]ury instructions typically leave the jury with wide discretion in choosing amounts, and the

presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big business, particularly those without strong local presences.'" *Id.* (quoting *Honda v. Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994) (quotation and brackets omitted)).  The Court further emphasized that "'elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also the severity of the penalty that a State may impose.'" *Id.* at 417

On May 26, 2005, this Court determined that Missouri has the most significant relationship to the Plaintiffs' allegations.  This Court ordered that Missouri law governs the availability of punitive damages.  For purposes of this motion, Defendant is not requesting summary judgment on the direct negligence and/or vicariously liability claims.  However, as shown below, this is simply not a case warranting the application of punitive damages, and the Court should grant this motion and enter judgment in B&W's favor on the punitive damages claim.

**ARGUMENT**

I.  **MISSOURI LAW IMPOSES A HEIGHTENED AND DEMANDING STANDARD FOR PUNITIVE DAMAGES**

Missouri law regarding punitive damages controls in this wrongful death action.  In this regard, V.A.M.S. 537.090 provides that in wrongful death cases "the mitigating and aggravating circumstances attending the death may be considered by the trier of facts" in assessing damages. *Call v. Heard*, 925 S.W. 2d 840, 849 (Mo. banc. 1996) (quoting the statutory language of V.A.M.S. 537.090).  The Missouri Supreme Court explained that aggravating circumstance damages in wrongful death actions are the equivalent to punitive damages and that due process

safeguards are required. *Id.* (citing the holding in *Bennett v. Owens-Corning Fiberglass Corp.*, 896 S.W.2d 464, 466 (Mo. Banc 1995)).

The Missouri Supreme Court has further recognized that punitive damages are extremely harsh and should be applied only sparingly. *Rodriguez v. Suzuki Motor Corp.* 936 S.W.2d 104, 110 (citing *Kansas City v. Keene Corporation*, 855 S.W.2d 360, 377 (Mo. banc 1993)). As such, Missouri forbids a claim for damages for aggravating circumstances, i.e. punitive damages, unless such damages are established by clear and convincing evidence. *Rodriguez*, 936 S.W.2d at 111. The clear and convincing standard is "an important check against unwarranted imposition of punitive damage." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 433 (1994). The "clear and convincing" standard of proof established in *Rodriguez* requires evidence "which instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Lewis v. FAG Bearings Corp.*, 5 S.W.2d 579, 582-583 (Mo App. S.D. 1999).

Missouri courts have repeatedly explained the aggravating circumstances allowed for consideration in a wrongful death action under the clear and convincing evidence standard. Ordinarily, [exemplary] damages are not recoverable in actions for negligence, because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct. *Hoover's Dairy, Inc. v. Mid-American Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc 1985) (quoting *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. banc 1973)). Punitive damages may be awarded if the defendant "showed complete indifference to or a conscious disregard for the safety of others." *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. banc 1991). Punitive damages are appropriate, therefore, only when clear and convincing evidence demonstrates defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of

others. *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 477. (Mo. App W.D. 2003). "Conscious disregard or complete indifference" includes situations where the person doing the act or failing to act must be conscious to the knowledge of surrounding circumstances and existing conditions, that, although lacking specific intent to injure, the person's conduct or failure to act will naturally and probably result in injury. *Hoskins v. Business Men's Assurance*, 116 S.W.3d 557, 564, 583 (Mo. App W.D. 2003), overruled on other grounds by *Werrermeyer v. K.C. Auto Salvage Co., Inc.*, 134 S.W. 3d 633 (Mo. Banc. 2004).

Furthermore, the "high degree of probability of injury" and "complete indifference or conscious disregard" standards are somewhat ambiguous. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151 (Mo. banc 2000). Upon examination of negligence cases in which exemplary damages were not allowed factors can be found that help clarify the "complete indifference" or "conscious disregard" standards. *Id.* Weighing against submission of punitive or aggravating circumstances damages are circumstances in which: prior similar occurrences known to the defendant have been infrequent; the injurious event was unlikely to have occurred absent negligence on the part of someone other than the defendant; and, the defendant did not knowingly violate a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred. *Id.;* See *Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 496, 510-11 (8 th Cir.1993); *Sutherland v. Elpower Corp.*, 923 F.2d 1285, 1290- 91 (8 th Cir.1991); *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 73- 74 (Mo. banc 1990); *M.C. v. Yeargin*, 11 S.W.3d 604, 614-15 (Mo.App.1999).

## II.   B&W IS ENTITLED TO SUMMARY JUDGMENT ON PUNITIVE DAMAGES

Based upon the heightened and demanding standard in this matter, there is simply no basis for punitive damages in this case. *First*, there is no evidence that B&W acted outrageously

or with evil, malice or reckless intent in connection with its monitoring of its drivers hours of service and safety training. To the contrary, the record demonstrates that B&W acted reasonably in its driver hiring, monitoring and training. *Second*, there is no clear and convincing evidence that B&W intentionally or maliciously acted with a conscious disregard for the safety of others. Finally, Plaintiffs are not entitled to punitive damages because there is no evidence that a B&W managing agent approved or ratified the conduct in question.

    **A.    Plaintiff Cannot Show That B&W Intentionally Acted With Conscious Disregard for the Safety of Others**

As an employing motor carrier, B&W operates under the regulations outlined in the Federal Motor Carrier Safety Regulations. B&W is required to be knowledgeable and compliant with these regulations. *49 C.F.R. § 390.3(e)(1)*. Every driver and employee shall be instructed, and shall comply, with all applicable regulations. *49 C.F.R. § 390.3(e)(2)*. As part and parcel of these regulations are the requirements regarding the maximum driving time for property carrying vehicles. Under this regulation, no motor carrier shall permit or require any driver, nor shall any driver drive as follows:

> (1) More than 11 cumulative hours following 10 consecutive hours of off duty; or
>
> (2) For any period after the end of the 14th hour after coming off duty following 10 consecutive hours of duty.
>
> (3) For any period after having been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or
>
> (4) For any period after having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week.

*49 CFR 395.3(a) & (B).* Likewise, the regulations prohibit a motor carrier from requiring or permitting a driver to operate a commercial motor vehicle, while the driver's ability or alertness is impaired or likely to become impaired, as to make continued operation of the vehicle unsafe. *49 C.F.R. 392.3.*

The language of these regulations offers no specific guidance or mandatory method of compliable conduct. Plaintiffs' own motor safety compliance expert opines that it is up to the motor carrier to determine how to handle compliance with the regulations. *Depo. John Moore*, p 52-53, attached as Exhibit E.

As such, motor carriers are left to implement their own safety programs to follow or exceed industry standards to ensure compliance. In spite of this lack of explicit instruction, B&W acted in a "noteworthy" fashion as it carried out its hiring, safety training, and regulation compliance activities. See *Depo. Andy Sievers*, p. 220.

At all times pertinent to this action, B&W's hiring practices were proper and in compliance with the Federal Motor Safety Regulations. *Depo. Andy Sievers*, p. 167-69 attached as Exhibit F; See, also, *49 C.F.R. 391*. Jeffrey Weigert was an independently contracted driver for B&W. *Depo. Larry Dean Brown,* p. 64. He previously worked for the motor carrier in 1998 and was rehired in 2004. B&W reviewed Weigert's driving history in July 2004. *Id.* at p. 61, 68 and 75. There were no indications that he was unfit to continue operating a motor vehicle for B&W. In fact, at the time he was rehired, Weigert had no violations or accidents. *Id.* at p. 124. If any questionable information came from this review, the general practice at B&W would have required further investigations. *Id.* at 76. Since he previously drove for the company, there was no industry standard requiring B&W to mandate Weigert attend another orientation meeting with the company.

There is no evidence that B&W consciously disregarded the safety of others by violating the Federal Motor Safety Regulation requirements regarding training and instruction. To the contrary, B&W exceeded the industry standard for the hiring of safety compliant personnel. B&W employed both an experience Director of Safety, Larry Dean Brown, as well as a Director of Rules Compliance, Fran Amiot, to manage compliance with the regulations. *Depo. Andy Sievers*, p. 240-41. A director of rule compliance is a rare position within the motor carrier industry. *Id.* The delegation of this position alone serves to demonstrate B&W's acknowledgement of the imperative necessity to hold the Federal Motor Safety Regulations in high regard. It is contradictory to assert that B&W consciously disregarded the safety of others when it employed two separate management employees solely for the purpose of ensuring driver safety.

Further evidence supports the fact that B&W met the industry standards for training and instructing its drivers as to the Federal Regulations of Motor Safety. B&W's Safety Director at the time of the incident, Larry Dean Brown, was hired in January 2004. One of his first orders of business was producing an hours of service chart for each of B&W's carrier terminals to enhance compliance with 49 C.F.R 395.3. *Depo of Larry Dean Brown,* p. 30. Under Brown's guidance, the B&W safety department held numerous safety meetings where discussions were had as to hours of service and driver fatigue. *Id.* at 31. In fact, hours of service and driver fatigue were a topic at every meeting. *Id.* at 56-57. B&W also published a safety newsletter that was sent to the approximately 800 B&W drivers. *Id.* p. 114-118. The contents of these newsletters addressed such issues as appropriate use of cruise control and driver fatigue. *Id.*

Corporate safety training did not begin and end with Mr. Brown's safety department. B&W independently contracted Jeffery Weigert from Bluebird Leasing through CWS, Inc. in

Gary, Indiana, a division of B&W's parent company, FCS, Inc. CWS dispatches approximately 200 trucks under B&W's authority from its terminal. *Depo. George Drain*, p. 15-16, attached as Exhibit G. CWS verified Weigert's qualifications prior to his employment. *Id.* at p. 20. CWS issues all drivers a Safety and Loss Prevention Manual and Federal Safety Regulation book. *Id.* at 61. CWS and B&W supplement the contents of these manuals with their own periodic safety meetings for their drivers. *Id.* at p. 25-26. CWS holds the safety meetings on Saturdays to allow for maximum attendance. *Id.* at 28. These meetings further demonstrate the importance of safety and training at B&W, as well as its affiliate carriers.

Any argument that punitive damages may be based upon an alleged failure to control compliance with hours of service regulations must be immediately rejected. All B&W/CWS routes are specifically designed for compliance with the hours of service regulations in 493 C.F.R. § 395.3. *Depo. George Drain*, p. 54. Furthermore, B&W employs a safety clerk and three individuals to exclusively oversee driver log audits. *Depo. Hazel Holbrook,* at p. 23-25. The purpose of these audits is to determine if any B&W drivers are traveling beyond the hours of service. *Id.* Every B&W driver submits logs to their respective terminals. *Id.* at 79. The terminals either submit the logs to B&W with payroll documents or individual drivers mail their logs directly to B&W. *Id.* B&W then performs two separate audits of the logs to ensure its drivers are adhering to the hours of service regulations. B&W initially uses a computer program to scan each and every log it receives to determine if any drivers violating the hours of service. *Id.* at 25. Most carriers only review a portion or percentage of their driver logs. *Depo. Andy Sievers*, p. 204. B&W also performs "hard audits" of driver logs by comparing supplemental documents from the drivers to the actual log. *Depo. Hazel Holbrook,* at p. 41. The "hard audit" process is an additional program to ensure against log falsification. *Id.* At the very least, B&W

performed one random hard audit per day on average. *Depo. Fran Amiot*, p. 162.

There is no doubt that B&W's safety compliance efforts are successful. Even at the time of this accident, Weigert was not in violation of the hours of service regulations. *Depo. Fred Semke*, p. 62, 157-158, attached as Exhibit H. While Plaintiff would like B&W to have had more stringent safety requirements, there is no denying the substantial facts demonstrating the importance of safety training and programs at B&W to ensure compliance with federally regulated hours of service. The extensive evidence shows that B&W's safety and training practices extinguish Plaitiffs' assertions that B&W acted outrageously, intentionally, or maliciously with regard to its compliance with the Federal Motor Vehicle Safety Regulations. B&W's safety practices related to hours of service create sufficient evidence to overcome the heightened and demanding standard of proof required under the application of Missouri law before punitive damages may be imposed. Therefore, B&W is entitled to summary judgment to Plaintiffs' punitive damages claims.

    **B.    Plaintiff Cannot Show That B&W Approved or Ratified Alleged Non-Compliance with Hours of Service Standards**

Plaintiffs' punitive damages claim must be rejected for an additional and independent reason: there is no evidence that a B&W officer, director or managing agent acted with the requisite malice or intentional disregard for the safety of others, or approved such conduct by one of its drivers. In fact, there is no evidence that a B&W agent was aware of such conduct, and "at the time" was conscious of a high probability that its conduct would cause injury. *Alack*, 923 S.W.2d at 339; *Keene*, 855 S.W.2d 375. To the contrary, evidence of B&W's safety programs, training and compliance procedures demonstrates that B&W agents acted with every intent to protect others traveling the same roads as its drivers. Consequently, in the absence of clear and

convincing evidence that that any that any B&W officer, director, or managing agent acted outrageously or intentionally, Plaintiffs cannot prevail on the punitive damages claim.

## CONCLUSION

For all of the reasons stated above, Plaintiff is unable to demonstrate, by clear and convincing evidence that Defendant B&W Cartage Company, Inc., outrageously, consciously or with evil, malicious or reckless intent, disregarded the safety of others.  Thus, Defendant B&W Cartage Company, Inc. respectfully requests that this Court grant summary judgment in favor of B&W on Plaintiffs' claim for punitive damages

Respectfully submitted,

/s/ Michael A. Lawder
Michael A. Lawder, Jr. (#6189990)
**ANDERSON & GILBERT**
515 Olive Street, Suite 704
St. Louis, MO  63101
Phone: 314-721-2777
mlawder@nuvox.net
*Attorney for Defendant, B & W Cartage Company, Inc.*

and


Jonathan M. Menuez (Ohio Bar No. 0064972)
Victoria D. Barto, Esq. (Ohio Bar No. 0071554)
**SUTTER O'CONNELL & FARCHIONE**
1301 East 9th Street, Suite 3600
Cleveland, OH 44114
Telephone: 216-928-2200
Facsimile: 216-928-4400
jmenuez@sutter-law.com
vbarto@sutter-law.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2006 the foregoing *Motion for Summary Judgment on Punitive Damages* and the attached *Memorandum* was served via e-mail and ordinary mail on the following:

| | |
|---|---|
| Mark S. Schuver<br>Mathis, Marifian et al.<br>23 Public Square<br>Suite 300, P.O. Box 307<br>Belleville, IL 62222<br>mschuver@mmrg.com | Attorney for Plaintiffs |
| William J. Niehoff<br>Mathis, Marifian et al.<br>23 Public Square<br>Suite 300, P.O. Box 307<br>Belleville, IL 62222<br>wniehoff@mmrg.com | Attorney for Plaintiffs |

/s/ Michael A. Lawder
Michael A. Lawder, Jr.    (#6189990)
*Attorney for Defendant, B & W Cartage Company, Inc.*